VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX
Civil Division

| | |
|---|---|
| FASTMETRIX, INC. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2011-10047 |
| | ) |
| ITT CORPORATION, | ) |
| Defendant. | ) |

## MOTION FOR LEAVE TO AMEND

The Plaintiff, FastMetrix, Inc. ("FastMetrix"), by counsel and pursuant to Rule 1:8 of the Rules of the Supreme Court of Virginia, hereby moves this Court for leave to amend its Complaint in this matter. In support thereof, FastMetrix states as follows:

1. FastMetrix originally filed its Complaint on July 8, 2011. Trial in this matter is set for four days beginning on December 17, 2012.

2. FastMetrix seeks to amend its Complaint to allege additional facts and assert additional claims, namely fraud and civil conspiracy, to support the existing cause of action. The existence of these additional facts and claims became known to FastMetrix during the course of discovery in this matter, after a recent document production by ITT and the depositions of current and former ITT employees.

3. A copy of FastMetrix's proposed Third Amended Complaint is attached hereto as Exhibit A.

4. There is no prejudice to the Defendant from the Court granting this Motion.

5. Rule 1:8 states that leave to amend pleadings shall be "liberally granted" in furtherance of the ends of justice.

WHEREFORE, the Plaintiff, FastMetrix, Inc., by counsel, asks the Court to give it

leave to amend its pleadings herein.

FASTMETRIX, INC.

By: _____

Counsel

Scott A. Surovell, Esq., VSB #40278
Nathan D. Rozsa, Esq., VSB #77268
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone 703.251.5400
Facsimile 703.591.9285
Counsel for FastMetrix, Inc.

G. Bartley Loftin, III, Esq.
Benjamin L. McArthur, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West
Huntsville, Alabama  35801
Telephone 256.517.5100
Facsimile 256.517.5200
bloftin@babc.com
bmcarthur@babc.com

## Certificate of Service

I certify October 26, 2012 I faxed and mailed the foregoing to:

William D. Dolan, III
David R. Warner
Venable LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA  22182

_____

Nathan D. Rozsa, Esq.

2

VIRGINIA:

### IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX
### Civil Division

|  |  |  |
|---|---|---|
| FASTMETRIX, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  2011-10047 |
| | ) | |
| ITT CORPORATION, | ) | |
| Defendant. | ) | |
| | ) | |

### THIRD AMENDED COMPLAINT

Plaintiff FastMetrix, Inc. ("FastMetrix") brings this action against Defendant ITT Corporation ("ITT"). In support of its Third Amended Complaint, FastMetrix states as follows:

### Parties and Venue

1.     FastMetrix is an Alabama corporation with its principal place of business in Huntsville, Madison County, Alabama that is qualified to transact business in the Commonwealth of Virginia.

2.     ITT is a Delaware corporation that maintains an office in the City of Alexandria, Virginia.

3.     Venue is proper pursuant to §§ 8.01-262(3) and (4) of the Code of Virginia.

4.     Moreover, venue in this county was agreed upon by the parties as part of a contract titled "Subcontract Agreement No. NSTA2222.1237.01," which was executed by the parties on or about June 8, 2007, having an effective date of September 1, 2006.

### Factual Background

3/264531.5

5.  FastMetrix is a small business that performs very specialized work related to precision optical systems. A significant part of FastMetrix's business relates to providing products and services to the federal government of the United States.

6.  ITT is a high-technology engineering and manufacturing company with more than 40,000 employees in offices located throughout the world. A significant part of ITT's business relates to providing products and services to the United States military and its allies.

7.  On or about April 14, 2005, ITT and FastMetrix entered into a teaming agreement (the "Teaming Agreement") in anticipation of ITT submitting a proposal to the National Geospatial-Intelligence Agency (NGA) for the InnoVision Omnibus Contract (hereinafter referred to as the "NGA/InnoVision Omnibus Contract") by the federal government. A true and correct copy of the Teaming Agreement is attached hereto as EXHIBIT A.

8.  The NGA/InnoVision Omnibus Contract required work to be performed related to three dimensional laser radar imaging and laser topographic mapping. The majority of this work required access to information classified by the US Government and was to be performed in the Washington metropolitan area. Generally speaking, this work involved measuring the distance from a laser in the air (typically attached to an airplane or helicopter) to the Earth's surface by precisely timing the round-trip travel time of a brief pulse of laser light. This data is then collected and analyzed to develop a three-dimensional image or topographic map. The technology is somewhat similar to radar, but uses a large number of laser pulses instead of radio frequency waves to make the distance measurements.

9.     The NGA/InnoVision Omnibus Contract was not a personal services contract. Rather, it was a level of effort contract.

10.     Very few companies in the United States have the capabilities experience and security clearances required to perform the three dimensional laser radar imaging and laser topographic mapping work required by the NGA/InnoVision Omnibus Contract.

11.     At the time that the NGA/InnoVision Omnibus Contract was announced for bid, ITT had very limited capability in the Washington metropolitan area to perform such work and very limited past experience with which to demonstrate the capacity to perform such work. FastMetrix, however, specializes in three dimensional laser radar imaging and laser topographic mapping work and had the required capability, experience and security clearances. As such, ITT and FastMetrix entered into the Teaming Agreement for the purpose of defining the relationship between the parties in anticipation of ITT submitting a proposal and, if successful, subcontracting the three dimensional laser radar imaging and laser topographic mapping work to be performed under the NGA/InnoVision Omnibus Contract to FastMetrix. In exchange for the future subcontract relationship offered by ITT, FastMetrix agreed to exclusively support the proposal to be submitted by ITT for the NGA/Innovision Omnibus Contract by allowing ITT, and ITT only, to utilize the expertise, methods, technology, trade secrets, equipment, reputation and credentials of FastMetrix.

12.     Under the Teaming Agreement, the parties agreed that FastMetrix

> will be responsible for all technical support, data analyses, architectural studies, systems engineering, configuration, modeling, simulation activities performed under the NGA/InnoVision Omnibus contract awarded to ITT that are related to three dimensional laser radar imaging and laser topographic mapping. In the event that ITT requires assistance in the execution of tasks under the

> NGA/InnoVision Omnibus contract relating to other laser remote sensing technologies, including but not limited to laser spectroscopy and laser vibrometry, then [FastMetrix] will be the preferred supplier of those services.

EXHIBIT A, Appendix A, p. 7.

13.    Absent FastMetrix's participation in the NGA/InnoVision Omnibus Contract, ITT would have had great difficulty performing the work relating to three dimensional laser radar imaging and laser topographic mapping required by the NGA/InnoVision Omnibus Contract, and, consequently, would likely not have been awarded the Contract.   In September 2006, however, with FastMetrix's participation, ITT was awarded the NGA/InnoVision Omnibus Contract.

14.    On or about June 8, 2007, FastMetrix and ITT entered into a contract titled "Subcontract Agreement No. NSTA2222.1237.01" (hereinafter referred to as the "Subcontract").   The Subcontract had an effective date of September 1, 2006, which is the date ITT was awarded the NGA/InnoVision Omnibus Contract.   A true and correct copy of the Subcontract is attached hereto as EXHIBIT B.

15.    Under the Subcontract, the parties agreed that FastMetrix is "responsible for **all** technical support, data analyses, architectural studies, systems engineering, configuration, modeling, simulation activities performed under the NGA/InnoVision Omnibus contract awarded to ITT that are related to three dimensional laser radar imaging and laser topographic mapping."  EXHIBIT B, Article 5.4 (emphasis added).

16.    The parties further agreed that, "In the event that ITT requires assistance in the execution of tasks under the NGA/InnoVision Omnibus contract relating to other laser

remote sensing technologies, including but not limited to laser spectroscopy and laser vibrometry, then [FastMetrix] will be the preferred supplier of those services." *Id.*

17.    The inclusion of the two provisions described above was of paramount importance to FastMetrix. It assured that ITT would not be able to obtain work that it had been unable to persuade the government that it was qualified to perform in the absence of FastMetrix's credentials and capabilities, without permitting FastMetrix to perform such work. So vital to FastMetrix was the inclusion of such language, that FastMetrix refused to enter into any prior versions of the Subcontract offered by ITT if the same was not included in the Subcontract.

18.    Section C, Article 12, of the Subcontract provides:

Each party agrees to conduct its business in compliance with all relevant state, local and federal laws and regulations and in such a manner that the name of the other party will not be discredited. Any party breaching this provision shall indemnify the other party for all damages, costs, liabilities and expenses (including attorneys' fees) resulting from such breach, without regard to the limitation of liability set forth in Article 16 of this Section.

EXHIBIT B, Section C, Article 12.

19.    Beginning at the time ITT proffered and then subsequently signed the Teaming Agreement, on or about April 14, 2005, and continuing through the time ITT entered the Subcontract with FastMetrix (ITT executed the Subcontract on or about June 8, 2007; the Subcontract had an effective date of September 1, 2006), ITT represented and promised that FastMetrix would be the exclusive provider of work under the NGA/InnoVision Omnibus contract related to three dimensional laser radar imaging and laser topographic mapping.

20.    ITT's representations and promises that FastMetrix would be the exclusive provider of three dimensional laser radar imaging and laser topographic mapping work under the NGA/InnoVision Omnibus contract were made to induce FastMetrix to support the preparations and submission of the ITT proposal to NGA and to induce FastMetrix to enter into the Subcontract.  ITT made such representations and promises with the intent that FastMetrix would rely on them, and FastMetrix did rely on them when it agreed to support the proposal and when it agreed to enter into the Subcontract with ITT.

21.    Through discovery in this litigation, FastMetrix has learned that ITT's representations and promises were false and that ITT never intended to fulfill its promises and obligations to direct all work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract to FastMetrix.

22.    FastMetrix was not aware that the representations made by ITT to induce FastMetrix to enter the Subcontract were false or that ITT had no intention of fulfilling its promises and obligations under the Subcontract until July 2, 2012.  On that date, ITT produced documents in response to FastMetrix's discovery requests showing that, as early as September 1, 2006, the very first day of the NGA/InnoVision Omnibus Contract and the effective date of the Subcontract, and continuing through and beyond June 8, 2007, when ITT signed the Subcontract, ITT was directing work exclusively reserved for FastMetrix under the Subcontract to ITT's own employees and other entities.

23.    In addition, ITT's former supervisor of the NGA/InnoVision Omnibus Contract and proposal efforts, Craig Falci, recently testified that, prior to being awarded the NGA/InnoVision Omnibus Contract on September 1, 2006, and prior to entering into the Subcontract Agreement with FastMetrix granting it the exclusive right to perform all work

3/264531.5                                   6

related to three dimensional laser radar imaging and laser topographic mapping, ITT intended to direct such work to entities other than FastMetrix.

24.   In light of FastMetrix's insistence on the inclusion of the exclusivity language in the Teaming Agreement and Subcontract, ITT's misrepresentations were willful and wanton in disregard for FastMetrix's rights.

25.   Through discovery in this litigation, FastMetrix has also learned that ITT, NGA, Northrop Grumman, Logos and OGS (together and/or in any combination of two or more), conspired willfully, maliciously and without legal justification to interfere with FastMetrix's Subcontract and reasonable business expectancy in violation of the Federal Acquisitions Regulations.   Specifically, ITT's deputy project manager for the NGA/InnoVision Omnibus Contract, Larry Wilkinson, testified as follows:

> Q.   We agree that Mr. Liuzzo and some others at OG Systems went from working on one project to [WBS] 5.5; correct?
> A.   **Agreed.**
> Q.   So they started working on LIDAR work?
> A.   **Agreed.**
> Q.   And that's the work we discussed earlier that under [Article] 5.4 [of the Subcontract] would have been work that FastMetrix should have gotten?
> A.   **Yes.**
>
> *****
>
> Q.   You understand that for the Government on this type of contract to direct ITT who to put on these contracts or these scopes of work, that would violated the Federal Acquisition Regulations; wouldn't it?
> A.   **Right.**
> Q.   So, for whatever reason, ITT chose to put, for example, Mr. Liuzzo on that contract, despite the existing subcontract with FastMetrix; right?
> A.   **We were told, "this is the way the organization is going to be," and we were given an org chart. The program manager, at the time, had discussions with the government to try and adjust the organizational chart.   And the government representatives said, "No, this is the organizational chart that you're going to work within."**
>
> *****

Q.   Now, did anybody at ITT say, "Hey, that violates the Federal Acquisition Regulations, you telling us who is supposed to be in these positions"?

A.   **We had discussions with the government in that it was not appropriate to tell the contractors who was supposed to work in what areas.  And they declined to change their organizational chart.**

Q.   And, based on that, ITT decided to go ahead and do the work?

A.   **So, based on that, ITT decided to allow the individuals to work under the WBS that they had been assigned to.**

Q.   And ITT received profits for that work; correct?

A.   **ITT receives profit on all work that's done on the contract, regardless of which subcontractor does it.**

*****

Q.   So, during your tenure as the deputy program manager [of the GeoSage program], you knew that the government had inappropriately directed you or ITT to put these people in certain places; right?

A.   **I knew they had directed us to put them in their places, and that's where they worked.**

Q.   And you knew that violated the Federal Acquisition Regulations?

A.   **And I knew that was inappropriate behavior.**

Q,   But you did nothing to stop it; right?

A.   **We did not change the organization.**

Q.   And ITT continued to collect the money related to that?

A.   **And ITT continued to collect funds from the government to do all the work that was given on the contract.**

Q.   I mean, it makes money on its subcontractors; correct?

A.   **Yes, it makes money on the subcontractors.**

Q.   And for every one of those contractors that they were told to put on inappropriately in violation of the Federal Acquisition Regulations, ITT accepted every penny; right?

A.   **ITT was paid for all work on the contract.**

Q.   Including the work that was done by these people that were, in violation of the Federal Acquisition Regulations, put on the contract?

A.   **ITT received compensation for everyone on the contract.**

26.   After FastMetrix began performing work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract and the Subcontract, ITT started learning FastMetrix's methods, techniques,

technology and trade secrets for gathering and analyzing the radar data that is used to develop three dimensional images and maps.

27.    Using FastMetrix's methods, techniques, technology and trade secrets for gathering and analyzing radar data, ITT continued to direct work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract to at least four (4) of its own employees, despite the clear provisions in the Subcontract that FastMetrix was to be the exclusive provider of such work. These ITT employees included Brad Chambers, Diane McCune, Joseph Cole, Adam R. Edson, Brian Griglak, Michael Ingram, Greg Terrie, Andrew Young, and Weidong Jiang.

28.    In addition, upon information and belief, ITT subcontracted with Abrams and Associates, Northrop Grumman Corporation ("Northrop Grumman"), Logos Technologies ("Logos") and OG Systems ("OGS") to perform work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract.

29.    By directing work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract to its own employees and to Abrams and Associates, Northrop Grumman, Logos and OGS, ITT breached Article 5.4 of the Subcontract.

30.    Moreover, through FastMetrix's performance of the work under the Subcontract, ITT learned and utilized FastMetrix's methods, techniques, technology and trade secrets for gathering and analyzing the laser radar data that is used to develop three dimensional images and maps for the benefit of itself and to the detriment of FastMetrix.

By retaining and using this benefit, ITT damaged FastMetrix by diminishing its competitive advantage and decreasing its productivity and profitability.

31.     On or about October 3, 2008, Gary Kamerman ("Kamerman"), the President of FastMetrix, met with several senior ITT representatives in Alexandria, Virginia, including Craig Falci, Joseph Pierce, Corina Atcherson, Amy Galven and Susan Word.  At that time, Joseph Pierce was the ITT Program Manager responsible for the NGA/InnoVision Omnibus Contract.  Craig Falci was his supervisor.

32.     During this meeting, Kamerman and the ITT personnel discussed the parties' interpretation of Article 5.4 of the Subcontract.

33.     Kamerman was clear in expressing to the ITT personnel his understanding that, under the Subcontract, FastMetrix was to be the exclusive provider of work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract.

34.     After the meeting in October 2008, however, ITT continued to direct work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract to its own employees and to other entities.  In doing so, ITT continued to breach Article 5.4 of the Subcontract.

35.     FastMetrix was damaged by ITT's fraudulent misrepresentations, suppressions and its refusal to direct all work related to three dimensional laser radar imaging and laser topographic mapping performed under the NGA/InnoVision Omnibus Contract to FastMetrix.

36.     ITT and others, including but not limited to, NGA, Northrop Grumman, Logos and OGS (together and/or in any combination of two or more), conspired willfully,

maliciously and without legal justification to interfere with FastMetrix's contract and reasonable business expectancy.

37.   ITT and others, including but not limited to, NGA, Northrop Grumman, Logos and OGS (together and/or in any combination of two or more), attempted to procure the participation, cooperation, agreement or other assistance of others to enter into a combination, association, agreement, mutual understanding or concert to willfully, maliciously and without legal justification interfere with FastMetrix's contract and reasonable business expectancy.

38.   ITT, NGA, Northrop Grumman, Logos, OGS, and others, knew that FastMetrix, by virtue of its subcontract with ITT, was to be the exclusive provider of work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract.

39.   ITT, NGA, Northrop Grumman, Logos, OGS, and others, knew the NGA/InnoVision Omnibus Contract was a level of effort contract and not a personal services contract.

40.   Despite this knowledge, ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more), conspired to cause NGA to impermissibly select certain non-FastMetrix individuals and companies to perform work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract, contrary to the NGA/InnoVision Omnibus Contract's status as a level of effort contract.   By doing so, ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more) conspired willfully,

maliciously and without legal justification to interfere with FastMetrix's contract and reasonable business expectancy.

## COUNT I - BREACH OF CONTRACT

41.     FastMetrix incorporates paragraphs 1 through 40 herein.

42.     On or about September 1, 2006, FastMetrix and ITT entered into the Subcontract.

43.     Under the Subcontract, the parties agreed that FastMetrix is "responsible for all technical support, data analyses, architectural studies, systems engineering, configuration, modeling, simulation activities performed under the NGA/InnoVision Omnibus Contract awarded to ITT that are related to three dimensional laser radar imaging and laser topographic mapping." EXHIBIT B, Article 5.4.

44.     FastMetrix performed some work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract.

45.     FastMetrix was ready, willing and able to perform *all* of the work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract. FastMetrix performed *all* of the work relating to three dimension laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract offered by ITT.

46.     ITT breached the Subcontract by numerous actions, including, but not limited to, by directing work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract to its own employees and to other entities.

47.     FastMetrix has been significantly damaged by ITT's breach of the Subcontract.

## COUNT II - UNJUST ENRICHMENT

48.   FastMetrix incorporates paragraphs 1 through 47 herein.

49.   Before FastMetrix began performing work under the NGA/InnoVision Omnibus Contract, ITT had very limited capabilities to perform work related to three dimensional laser radar imaging and laser topographic mapping. Such work, however, was required to be performed under the NGA/InnoVision Omnibus Contract.

50.   Absent FastMetrix's participation as a subcontractor in the NGA/InnoVision Omnibus Contract, ITT would have had great difficulty performing the work related to three dimensional laser radar imaging and laser topographic mapping required by the NGA/InnoVision Omnibus Contract. Furthermore, as a result of the Contract, ITT was not contractually allowed to perform any of the work under the Agreement.

51.   While FastMetrix was performing work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract, ITT was privy to FastMetrix's methods, techniques, and technology for gathering and analyzing the radar data that is used to develop three dimensional images and maps.

52.   After FastMetrix partially performed the work under the Subcontract, ITT increasingly directed the three dimensional laser radar imaging and laser topographic mapping required under the NGA/InnoVision Omnibus Contract to its own employees and to other subcontractors by utilizing FastMetrix's methods, techniques, and technology.

53.   FastMetrix conferred a benefit on ITT when ITT learned FastMetrix's methods, techniques, and technology for gathering and analyzing the laser radar data that is used to develop three dimensional images and maps.

54.   ITT knew that FastMetrix conferred this benefit.

55.   ITT, by utilizing FastMetrix's methods, techniques, and technology to perform work related to three dimensional laser radar imaging and laser topographic mapping under the Subcontract, retained the benefits conferred by FastMetrix without paying for them.

56.   ITT has been unjustly enriched by inequitably retaining and utilizing FastMetrix's methods, techniques, and technology for gathering and analyzing the laser radar data that is used to develop three dimensional images and maps without paying for them.

57.   ITT also was aware of the exclusivity provision which allowed only FastMetrix to do the LIDAR work under Section 5.4 of the Agreement.  By refusing to honor that provision and intentionally breaching the contract, ITT has been unjustly enriched.  As a result of ITT's breach, ITT was unjustly enriched by receiving profits as well as allocation to its General and Administrative expenses, overhead and other categories related to its charges. Additionally, ITT received passthrough funds on the work it allowed others to do in violation of the contract.

58.   As a direct and proximate result of ITT's actions, FastMetrix has suffered substantial damages.

## COUNT III – VIOLATION OF VIRGINIA UNIFORM TRADE SECRETS ACT

59.   In the alternative to Count II, Paragraphs 1 through 58 are incorporated herein.

60.   ITT is a "person" pursuant to § 59.1-336 of the Code of Virginia.

61.   FastMetrix's methods, techniques and technology as described above constitute "Trade Secrets" pursuant to § 59.1-336 of the Code of Virginia.

62.     ITT's actions described above constitute a "Misappropriation" pursuant to § 59.1-336 of the Code of Virginia.

63.     ITT's Misappropriation was by "Improper Means" pursuant to § 59.1-336 of the Code of Virginia including but not limited to because FastMetrix specifically contracted to be the exclusive provider of the work pursuant to the NGA/InnoVision Omnibus Contract.

64.     FastMetrix undertook reasonable efforts under the circumstances to preserve the secrecy of its Trade Secrets by specifically requiring ITT to use FastMetrix as the exclusive provider of specific services during the term of NGA/InnoVision Omnibus Contract.

65.     FastMetrix is entitled to its damages including but not limited to its actual losses, unjust enrichment, and/or a reasonable royalty, and punitive damages, pursuant to § 59.1-338(A) of the Code of Virginia.

66.     ITT's continued Misappropriation of FastMetrix's Trade Secrets in the face of FastMetrix's demands that ITT cease and desist from such actions establishes a willful and malicious misappropriation entitling FastMetrix to punitive damages pursuant to § 59.1-338(B) of the Code of Virginia.

67.     FastMetrix is further entitled to reasonable attorney's fees pursuant to § 59.1-338.1 of the Code of Virginia.

## COUNT IV – ACTUAL AND/OR CONSTRUCTIVE FRAUD

68.     FastMetrix incorporates paragraphs 1 through 67 herein.

69.     ITT made misrepresentations of material fact to FastMetrix to induce FastMetrix to enter into the Subcontract. Specifically, ITT misrepresented that FastMetrix

would be "responsible for all technical support, data analyses, architectural studies, systems engineering, configuration, modeling, simulation activities performed under the NGA/InnoVision Omnibus contract awarded to ITT that are related to three dimensional laser radar imaging and laser topographic mapping" and that FastMetrix would be the preferred supplier of work "under the NGA/InnoVision Omnibus contract relating to other laser remote sensing technologies, including but not limited to laser spectroscopy and laser vibrometry" (the "Representations").

70.     ITT's Representations were made with the intent that FastMetrix would rely upon them.

71.     ITT never intended to fulfill the promises and obligations of the Representations.

72.     FastMetrix relied upon ITT's Representations.

73.     In reliance on ITT's Representations, FastMetrix agreed to enter the Subcontract.

74.     FastMetrix did not discover that ITT's Representations were in fact false until on or about July 2, 2012.

75.     Moreover, ITT actively precluded FastMetrix from meetings and other activities to prevent FastMetrix from discovering the fraud.

76.     FastMetrix was damaged as a result of ITT's fraud. Such damages include, but are not limited to, lost profits and the diminution of value in FastMetrix's business.

77.     ITT's actions were willful and wanton in disregard of Plaintiff's rights.

## COUNT V – CONSPIRACY TO INJURE FASTMETRIX IN ITS TRADE OR BUSINESS IN VIOLATION OF VA CODE § 18.2-499

78.    FastMetrix incorporates paragraphs 1 through 77 herein.

79.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more), did combine, associate, agree, mutually undertake or concert together for the purpose of willfully, maliciously and without legal justification injuring FastMetrix in its trade or business by interfering with FastMetrix's contract and reasonable business expectancy.

80.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more), did combine, associate, agree, mutually undertake or concert together for the purpose of willfully, maliciously and without legal justification compelling another to interfere with FastMetrix's contract and reasonable business expectancy and/or to perform any act against its will, or preventing or hindering it from doing or performing any lawful act.

81.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more) did conspire to tortuously interfere with FastMetrix's contract and reasonable business expectancy by causing NGA to impermissibly select certain non-FastMetrix individuals and companies to perform work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract, contrary to the NGA/InnoVision Omnibus Contract's status as a level of effort contract.

82.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more) were aware of the Subcontract between FastMetrix and

ITT and FastMetrix's expectation to perform all work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract.

83.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more) intentionally interfered with FastMetrix's expectancy by causing NGA to impermissibly select certain non-FastMetrix individuals and companies to perform work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract, contrary to the NGA/InnoVision Omnibus Contract's status as a level of effort contract.

84.    ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more) used improper means or methods to interfere with FastMetrix's expectancy.   Specifically, these parties conspired to cause NGA to impermissibly select certain non-FastMetrix individuals and companies to perform work related to three dimensional laser radar imaging and laser topographic mapping under the NGA/InnoVision Omnibus Contract, contrary to the NGA/InnoVision Omnibus Contract's status as a level of effort contract.

85.    FastMetrix suffered substantial loss of revenues and profits resulting from the willful and malicious disruption of expectancy caused by ITT, NGA, Northrop Grumman, Logos, OGS, and others (together and/or in any combination of two or more).

WHEREFORE, FastMetrix requests the following relief:

1.  Award Plaintiff, FASTMETRIX, INC. a judgment against ITT CORPORATION in the amount of FIFTEEN MILLION DOLLARS ($15,000,000.00) for any and all compensatory damages to which it is entitled;

2.  Award Plaintiff, FASTMETRIX, INC., three-fold the damages sustained by it, including its lost profits, pursuant to VA Code § 18.2-500;

3.  Award Plaintiff, FASTMETRIX, INC. a judgment against ITT CORPORATION in the amount of THREE-HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00) for any and all punitive damages to which it is entitled;

4.  Disgorge from ITT all money, no matter how allocated, which ITT received from the government related to any LIDAR work which violated the contract between the parties;

5.  Award Plaintiff, FASTMETRIX, INC. a judgment against ITT CORPORATION for its attorney's fees;

6.  Award Plaintiff, FASTMETRIX, INC. a judgment against ITT CORPORATION for prejudgment and postjudgment interest;

7.  Award Plaintiff, FASTMETRIX, INC. a judgment against ITT CORPORATION for its costs; and

8.  For any such other and further relief the Court deems necessary.

A JURY TRIAL IS HEREBY DEMANDED

FASTMETRIX, INC.

By: _~Natt P~_____
                              Counsel

Scott A. Surovell, Esq., VSB #40278
Nathan D. Rozsa, Esq., VSB #77268
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone 703.251.5400
Facsimile 703.591.9285
Counsel for FastMetrix, Inc.

G. Bartley Loftin, III, Esq.
Benjamin L. McArthur, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West
Huntsville, Alabama 35801
Telephone 256.517.5100
Facsimile 256.517.5200
bloftin@babc.com
bmcarthur@babc.com

## Certificate of Service

I certify that on October 26, 2012 I faxed and mailed the foregoing to:

William D. Dolan, III
David R. Warner
Venable LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182

_~Natt P~_____
Nathan D. Rozsa

## Listing of Attached Exhibits

EXHIBIT A   Teaming Agreement (Apr. 14, 2005).

EXHIBIT B   Subcontract Agreement No. NSTA2222.1237.01 (effective date of Sept. 1, 2006).

3/264531.5                          20

MEMORY TRANSMISSION REPORT

|  |  |
|---|---|
| TIME | :10-26-'12 15:19 |
| FAX NO.1 | : 703-591-9285 |
| NAME | : Sipl |

|  |  |  |
|---|---|---|
| FILE NO. | : | 696 |
| DATE | : | 10.26 15:11 |
| TO | : ☎ | 7038218949 |
| DOCUMENT PAGES | : | 25 |
| START TIME | : | 10.26 15:11 |
| END TIME | : | 10.26 15:19 |
| PAGES SENT | : | 25 |
| STATUS | : | OK |

*** SUCCESSFUL TX NOTICE ***



## SUROVELL ISAACS PETERSEN & LEVY PLC

ROBERT J. SUROVELL
DOROTHY M. ISAACS*
DAVID M. LEVY
SCOTT A. SUROVELL*
J. CHAPMAN PETERSEN*
CORY FREDERICK GRINIUS*
JENNIFER D. BAUMGARTNER
DANIELE ALLAN CRANDALL
JASON B. BRAUN
NATHAN D. ROZSA
JASON F. ZELLMAN*
MICHELE L. JOSEPH
KEVIN CANNON KELLY*
SAMI E. WHITE
ANDREW R. TANK
ANDREW J. GUZZO
MARGARET B. CRAIG

OF COUNSEL
DAVID J. PIDALA*
G. DONALD MARKLE*

* ALSO ADMITTED IN DC
+ ALSO ADMITTED IN MD

WRITER'S DIRECT DIAL: 703.277.9750
WRITER'S EMAIL: SSUROVELL@SIPLFIRM.COM

October 26, 2012

# FACSIMILE COVER LETTER
## PLEASE IMMEDIATELY DELIVER THE FOLLOWING TO:

### WILLIAM D. DOLAN, III, ESQ.
*Venable LLP*

|  |  |
|---|---|
| FACSIMILE: | 703.821.8949 |
| TELEPHONE: | 703.760.1600 |

THIS TELEFAX ORIGINATES FROM:  **Nathan D. Rozsa, Esq.**

MATTER:  *Fastmetrix, Inc. v. ITT Corporation*

COMMENTS:  Please see attached Motion for Leave to Amend.

OPERATOR:  Lourie M. Callahan 703-277-9756

TOTAL PAGES TRANSMITTED (INCLUDING THIS COVER): _____ 23 _____.

**If you did not receive all of the pages, please call as soon as possible and ask to speak to the operator named. Thank you.**

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

4010 University Drive, Second Floor | Fairfax, Virginia 22030 | P: 703-251-5400 | F: 703-591-9285 | www.siplfirm.com

FASTMERIX, INC

Plaintiff

vs.

**Civil Action No.** **CL** 2011-10047

ITT CORPORATION

Defendant

**Previous Chancery No.** **CH** _____

SERVE:

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:** [✓] Plaintiff [ ] Defendant [ ] Other

**Title of Motion:** Motion for Leave to Amend          [✓] Attached [ ] Previously Filed

**DATE TO BE HEARD:** November 2, 2012          **Time Estimate** (combined no more than 30 minutes): 30

**Time to be Heard:** [ ] 9:00 a.m. with a Judge          [ ] 9:00 a.m. without a Judge

[✓] 10:00 a.m. (Civil Action Cases) Does this motion require 2 weeks notice? [ ] Yes [✓] No

[ ] 11:30 a.m. (DOMESTIC/Family Law Cases) Does this motion require 2 weeks notice? [ ] Yes [ ] No

**Case continued from:** _____ (Date) continued to: _____ (Date)

Moving party will use *Court Call* telephonic appearance: [ ] Yes [ ] No

Judge _____ **must hear this motion because** (check one reason below):

[ ] The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
[ ] This Judge has been assigned to this entire case by the Chief Judge; or,
[ ] The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
[ ] This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** Nathan D. Rozsa                    Surovell Isaacs Petersen & Levy PLC
Printed Attorney Name/ Moving Party Name                    Firm Name

4010 University Drive, Second Floor, Fairfax, VA 22030
Address

(703) 277-9713          (703) 591-9285          77268          nrozsa@siplfirm.com
Tel. No.                    Fax No.                    VSB No.          E-Mail Address (optional)

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

_____
Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 26th day of October , 2012 , a true copy of the foregoing Praecipe was

[✓] mailed [✓] faxed [ ] delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

_____
Moving Party/Counsel of Record

CCR-E-10 (April 2010 version)